# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### CHATTANOOGA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:19-CV-** |
| | ) | |
| **v.** | ) | **Judges _____** |
| | ) | |
| **REAL PROPERTY LOCATED AT** | ) | |
| **3505 HOYT STREET** | ) | |
| **CHATTANOOGA, TENNESSEE 37411,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## VERIFIED COMPLAINT *IN REM*

Comes now the plaintiff, United States of America, by and through its attorneys, J. Douglas Overbey, United States Attorney for the Eastern District of Tennessee, and Gretchen Mohr, Assistant United States Attorney, and brings this complaint and alleges as follows in accordance with Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions:

## NATURE OF THE ACTION

1.      In this *in rem* civil action, the United States of America seeks forfeiture of the real property having a mailing address of 3505 Hoyt Street, Chattanooga, Tennessee 37411 (hereinafter "defendant property").

## THE DEFENDANT *IN REM*

2.     The United States seeks forfeiture of the following defendant property, with all appurtenances, improvements, and attachments thereon, which are more fully identified and more particularly described below:

IN THE CITY OF CHATTANOOGA, HAMILTON COUNTY, TENNESSEE:

The west fifty (50) feet of the East one hundred (100) feet of Lot One (1), R. W. Duncan Subdivision, as shown by plat recorded in Plat Book 20, Page 16, of the Register's Office of Hamilton County, Tennessee. According to said plat, said part of lot fronts fifty (50) feet on the North line of Hoyt Street, and extends back Northwardly, between parallel lines, one hundred (100) feet to the North line of said lot.

FOR PRIOR TITLE, see Deed from Eugene Walter Wooten and wife, Virginia Gayle Tate Wooten, to Larry Manghane and wife, Brenda M. Manghane, executed October 19, 1971 and recorded on October 26, 1971 in Book 1994, Page 465, in the Register's Office of Hamilton County, Tennessee.

THIS CONVEYANCE MADE SUBJECT TO THE FOLLOWING:

Any governmental zoning and subdivision ordinances in effect thereon.

All notes, stipulations, restrictions, easements, conditions, and regulations as shown, described or noted on recorded plat in Book E, Volume 29, Page 541, and in Plat Book 20, Page 16, in the Register's Office of Hamilton County, Tennessee.

Conditions restrictions, reservations, limitations, easements, any lien rights, etc., as set out in instrument recorded in Book E, Volume 29, Page 541, as modified in Book U, Volume 29, Page 358, and in Book 809, Page 702, in the Register's Office of Hamilton County, Tennessee, but omitting any covenant or restriction based on race, color, religion, sex, handicap, familial status or national origin unless and only to the extent that said covenant (a) is exempt under Chapter 42, Section 3607, of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons.

Easement as set out in instrument recorded in Book 1570, Page 73, in the Register's Office of Hamilton County, Tennessee.

Conditions and easements contained in document of record in Book 2116, Page 186, in the Register's Office of Hamilton County, Tennessee.

For further reference see Quitclaim Deed recorded on March 28, 2019, in Deed Book GI 11599, Page 617, in the Register's Office of Hamilton County, Tennessee, Instrument Number 2019032800173.

3.     The defendant property has not been seized but is within the jurisdiction of the Court pursuant to 28 U.S.C. § 1355(b)(1)(A).  The United States does not request authority from the Court to seize the defendant property at this time.  The United States will, as provided by 18 U.S.C. §§ 985(b)(2) and (c)(1):

a)  post notice of this action and a copy of the Complaint on the defendant property;

b)  serve notice of this action on the record owner of the defendant property, and any other person or entity who may claim an interest in the defendant property, along with a copy of this Complaint;

c)  execute a writ of entry for purposes of conducting an inspection and inventory of the defendant property; and

d)  file a notice of *lis pendens* in the county records where the defendant property is located.

## JURISDICTION AND VENUE

4.     Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property.  This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5.     This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture of the defendant property occurred in this district.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A), because the acts or omissions giving rise to the forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395(b) because the defendant property is located in this district.

## BASIS FOR FORFEITURE

7.      The United States of America seeks forfeiture of the defendant property pursuant

to the following:

   a) 21 U.S.C. § 881(a)(6), which authorizes forfeiture of all moneys, negotiable
      instruments, securities, or other things of value furnished or intended to be
      furnished by any person in exchange for a controlled substance or listed chemical
      in violation of the Controlled Substances Act, all proceeds traceable to such an
      exchange, and all moneys, negotiable instruments, and securities used or intended
      to be used to facilitate a violation of the Controlled Substances Act, in violation of
      21 U.S.C. §§ 841 and/or 846;

   b) 21 U.S.C. § 881(a)(7), which authorizes forfeiture of any property, real or
      personal, which is used, or intended to be used, in any manner or part, to commit,
      or to facilitate the commission of a violation of 21 U.S.C. § 846, and/or 841;

   c) 18 U.S.C. § 981(a)(1)(A), which authorizes forfeiture of any property, real or
      personal, involved in a transaction or attempted transaction in violation 18 U.S.C.
      §§ 1956 and/or 1957, or any property traceable to such property; and

   d) 18 U.S.C. § 981(a)(1)(C), which authorizes forfeiture of any property, real or
      personal, which constitutes or is derived from proceeds traceable to any offense
      constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7), or
      a conspiracy to commit such offense.

8.      Pursuant to 21 U.S.C. § 881(h), all right, title and interest in the defendant

properties became vested in the United States at the time of the acts giving rise to the forfeiture.

## FACTS

9. As set forth in detail in the Affidavit of Special Agent, William C. Wise, Drug Enforcement Administration, the Government's investigation has determined that the defendant property constitutes facilitating property and/or proceeds traceable to violations of 21 U.S.C. §§ 841 and/or 846 and was derived from proceeds traceable to and involved in violations of 18 U.S.C. §§ 1956 and/or 1957. The owner of the defendant property, Jerriod Sivels, also known as "Jerriod Lee," also known as "Jerriod Sivels-Lee," also known as "Jerry," also known as "Lil Jerry," also known as "BRMG Jay," and other co-conspirators, were engaged in the distribution of cocaine that operates in Tennessee, and were laundering drug proceeds in order to hide and disguise these proceeds from law enforcement officials and to promote and facilitate their drug trafficking activities.

10. The defendant property, therefore, is subject to forfeiture pursuant to 21 U.S.C. §§ 881(a)(6), 881(a)(7), 18 U.S.C. §§ 981(a)(1)(A), and 981(a)(1)(C).

## CLAIM FOR RELIEF

11. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 10 above.

## PRAYER FOR RELIEF

Wherefore, the United States of America prays:

a)  Defendant property be condemned and forfeited to the United States of America in accordance with the provisions of law;

b)  Notice of this action be given to all persons known or thought to have an interest in or right against the defendant property;

c)  Plaintiff be awarded its costs in this action and for such other necessary and equitable relief as this Court deems proper.

Respectfully submitted,

J. DOUGLAS OVERBEY
United States Attorney


By:  *s/Gretchen Mohr*
GRETCHEN MOHR
Assistant United States Attorney
800 Market Street, Suite 211
Knoxville, Tennessee  37902
(865) 545-4167

## **VERIFICATION**

I, William C. Wise, Special Agent, Drug Enforcement Administration, hereby verify and declare under penalty of perjury as provided by 28 U.S.C. § 1746, the following:

That I have read the foregoing Verified Complaint *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint *In Rem* and in the accompanying Affidavit are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are from information gathered by law enforcement officers, as well as my investigation of this case with the Drug Enforcement Administration.

I hereby verify and declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this ____13th____ day of May, 2019.

William C. Wise
Special Agent
Drug Enforcement Administration

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**DEFENDANTS**

3505 Hoyt Street, Chattanooga ,TN 37411

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Hamilton County, Tennesse
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Gretchen Mohr, AUSA, 800 Market St., Suite 211
Knoxville, Tennessee 37902, (865) 545-4167

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☒ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
Another District
*(specify)*

☐ 6   Multidistrict
Litigation -
Transfer

☐ 8   Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C) and 21 U.S.C. §§ 881(a)(6) and 881(a)(7)

Brief description of cause: Forfeiture of real property that constitutes facilitating property and/or proceeds traceable to 21 U.S.C.
§§ 841 and/or 846 and 18 U.S.C. §§ 1956 and/or 1957

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Travis R. McDonough

DOCKET NUMBER   1:19-cr-46

DATE
05/21/2019

SIGNATURE OF ATTORNEY OF RECORD
s/ Gretchen Mohr

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

**AFFIDAVIT IN SUPPORT OF VERIFIED COMPLAINT *IN REM***

I, William C. Wise, Drug Enforcement Administration, ("DEA') Special Agent, being duly sworn, states that the following is true and correct to the best of my knowledge

**Professional Training and Experience of Affiant**

1.    I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2.    I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice.  I have been so employed for the past 20 years.  I am currently assigned to the Chattanooga Resident Office.  Prior to my current assignment, I was assigned to the Chiang Mai Resident Office, Honolulu District Office, and the Chicago Field Division.   Prior to my employment with the DEA, I was employed as an Arlington County Police Officer for approximately 5 years and 6 months in Arlington, Virginia.

3.    In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848.  I have also been involved in various types of wire and electronic surveillance, and in the debriefing of defendants, witnesses, informants, and others who have knowledge of narcotics trafficking, and of the laundering and concealing of proceeds of drug trafficking for the past 19 years.  I have received specialized training in the enforcement of laws concerning the activities of narcotics traffickers, including four months of DEA basic training in Quantico, Virginia as well as periodic refresher training offered by the DEA.  My current assignment involves

1

investigations of high-level drug trafficking organizations in east Tennessee, north Georgia, and elsewhere.

4. I have experience in the execution of documentary search warrants, the debriefing of defendants, witnesses, informants and other persons who have knowledge of the amassing, spending, converting, transporting, distributing, laundering and concealing the proceeds of illegal activities. In connection with my official duties as a Federal Law Enforcement Officer, I have been assigned or assisted with investigations involving drug trafficking and money laundering in violation of Titles 18 and Title 21 United States Code. The investigations in which I have participated have resulted in the arrest, prosecution and conviction of individuals who have committed these crimes.

5. I know, based on my training and experience, that persons engaged in drug trafficking and money laundering frequently retain records of their transactions within their residence, place of business, rented storage units, vehicles, or other places under their control. These records may be in the form of written notes and correspondence, receipts, negotiated instruments, contracts, bank statements, and other records. Records of this kind are also often stored on computer media.

6. I know that money launderers and narcotics traffickers attempt to conceal themselves from law enforcement by attempting to distance themselves from their criminal activity. This is performed by utilizing fictitious or nominee names to account for their assets and accretion of wealth. Often the money launderers and narcotics traffickers will utilize these other identities to register automobiles, boats, houses, telephone services, utility services, etc. in order to further secret their participation in criminal activity. Another method used by leaders within a criminal enterprise to remain unnoticed by law enforcement is the utilization of other individuals

within their organization to perform specific acts in furtherance of the criminal activity, for example performing financial transactions utilizing the proceeds of their illegal activity or the purchase, sale and distribution of narcotics. In addition to concealing their identities, it is common for money launderers and narcotics traffickers to frequently change their forms of communication and methods of operation to avoid detection by law enforcement.

7.     Based upon my training and experience with money laundering and criminal investigations, combined with the knowledge and information concerning, controlled substances, and investigations thereof provided by other law enforcement officers, I know that:

a.     Drug dealers usually keep controlled substances and paraphernalia for packaging, cutting, weighing, transporting, and distributing controlled substances at places under their control, such as their residences, or in the control of their trusted associates. Drug paraphernalia is typically in close proximity to the locations of the controlled substances themselves.

b.     Persons involved in drug distribution and its related money laundering activities acquire and maintain records related to drug distribution and records relating to the acquisition and disposition of drug proceeds. Drug traffickers commonly create and maintain books, records, receipts, notes, ledgers, and documents reflecting the names, nicknames, addresses, telephone and pager and other contact numbers of their drug trafficking conspirators, including their sources of supply and their customers. These records typically document the following:

i.   amounts of money owed and amounts of drugs purchased by customers, as well as amounts of money owed to and amounts of drugs purchased from sources of supply;

ii.  transportation to acquire and to sell drugs;

3

iii. the purchase of drugs, drug packaging supplies, drug paraphernalia, and other assets used to facilitate the acquisition and sale of drugs; and

iv. the location of storage facilities and other stash locations to store drugs.

c. Drug traffickers commonly profit and amass proceeds from their illicit activity. In order to protect their illegal activity and be able to utilize the profits, they attempt to disguise and legitimize these profits through money laundering activities.

d. Drug traffickers often purchase and/or title assets bought with illegal proceeds in fictitious names, aliases, names of relatives, associates, or business entities, who serve as "nominee" title holders while the criminals actually own and continue to use the assets and exercise dominion and control over the assets.

e. Drug traffickers often engage in legitimate businesses as a "front" to launder drug proceeds. The business front provides a means for the criminal to show that he/she has legitimate income, when, in fact, the income is solely from the criminal activity. Records of such legitimate businesses funded by the proceeds of illegal activity constitute relevant evidence of money laundering offenses.

f. Drug traffickers maintain records pertaining to their acquisition, conversion, movement, secreting, transfer, concealment and/or expenditure of drug proceeds, such as: currency, financial instruments and investments, real estate, automobiles, boats, other vehicles, home furnishings, stocks, bonds, precious metals and gemstones, jewelry, electronic equipment and other assets in the form of books, records, invoices, receipts, records of real estate transactions, purchase agreements, automobile titles, bank statements, financial statements, letters of credit, money orders, cashier's checks, safe deposit box agreements and keys, and money wrappers.

4

g.      Drug traffickers and their associates are known to use aliases, fictitious and multiple addresses, and multiple drivers' licenses, as well as maintain records of the same, in order to conceal their true identity and hinder law enforcement investigation of their illegal activity.

h.      Drug traffickers often obtain lines of credit, loans, or mortgages to purchase assets in which they have low equity interest to avoid seizure and forfeiture attempts by law enforcement authorities.

i.      Drug traffickers primarily utilize U.S. currency as the method of conducting their illegal activity.  Therefore, drug traffickers often maintain on hand and have quick access to large amounts of U.S. currency or other liquid assets in order to maintain and finance their ongoing criminal business.

j.      Drug traffickers often utilize electronic equipment such as computers, smartphones, tablet computers, currency counting machines, and telephone answering machines to generate, transfer, count, record, and/or store the information described in the preceding paragraphs.

k.      Drug traffickers often use telephones to facilitate their drug activities. Records of such telephone calls, including telephone bills, are commonly kept and maintained by the drug traffickers.

l.      Drug traffickers often take or cause to be taken photographs or video movies of themselves, their associates, their property and assets, and their product.

m.      Drug traffickers commonly maintain firearms, such as handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons.  These weapons are used to protect and secure their property, drugs, and cash stores from thieves, as drug traffickers are often the victims of robberies and "rip-offs" during a drug or other illegal transaction.  Because firearms are

5

in demand by drug dealers, such items are often bartered for drugs or other contraband. Indeed, the law has long recognized that the presence of firearms is relevant and probative of drug crimes, as such are tools of the trade of drug traffickers.

8. Except as noted herein, all of the information contained in this affidavit is either known to me personally or has been told to me by other law enforcement officers, to include investigative reports by other officers.

### Court Authorized Title III Interceptions

9. On January 8, 2019, a federal application and order to intercept the wire and electronic communications of Jerriod SIVELS over (423) 680-0530 (Target Telephone #1) and (615) 491-2638 (Target Telephone #2) was signed by the Honorable Judge Harry S. Mattice, Jr., United States District Judge, Eastern District of Tennessee. On February 6, 2019, the Honorable Judge Harry S. Mattice, Jr., signed an order authorizing the continued interception of Target Telephone #1 and Target Telephone #2. Interceptions occurred between January 8, 2019 and March 4, 2019.

10. On January 18, 2019, a federal application and order to intercept the wire and electronic communications of Jerriod SIVELS over (423) 708-0796 (Target Telephone #4) was signed by the Honorable Judge Harry S. Mattice, Jr., United States District Judge, Eastern District of Tennessee. Interceptions occurred between January 18, 2019 and February 15, 2019.

11. On February 19, 2019, a federal application and order to intercept the wire communications of Jamaal PARKER over (423) 383-6915 (hereinafter referred to as Target Telephone #3) was signed by the Honorable Judge Harry S. Mattice, Jr., United States District Judge, Eastern District of Tennessee. Interceptions occurred between February 19, 2019 and March 4, 2019.

## Property for Forfeiture

12.     This affidavit supports the civil forfeiture of real property, with all appurtenances, improvements, and attachments thereon, located at 3505 Hoyt Street, Chattanooga, Tennessee 37411 ("subject property") and described as follows:

> IN THE CITY OF CHATTANOOGA, HAMILTON COUNTY, TENNESSEE:
>
> The west fifty (50) feet of the East one hundred (100) feet of Lot One (1), R. W. Duncan Subdivision, as shown by plat recorded in Plat Book 20, Page 16, of the Register's Office of Hamilton County, Tennessee. According to said plat, said part of lot fronts fifty (50) feet on the North line of Hoyt Street, and extends back Northwardly, between parallel lines, one hundred (100) feet to the North line of said lot.
>
> FOR PRIOR TITLE, see Deed from Eugene Walter Wooten and wife, Virginia Gayle Tate Wooten, to Larry Manghane and wife, Brenda M. Manghane, executed October 19, 1971 and recorded on October 26, 1971 in Book 1994, Page 465, in the Register's Office of Hamilton County, Tennessee.
>
> THIS CONVEYANCE MADE SUBJECT TO THE FOLLOWING:
>
> Any governmental zoning and subdivision ordinances in effect thereon.
>
> All notes, stipulations, restrictions, easements, conditions, and regulations as shown, described or noted on recorded plat in Book E, Volume 29, Page 541, and in Plat Book 20, Page 16, in the Register's Office of Hamilton County, Tennessee.
>
> Conditions restrictions, reservations, limitations, easements, any lien rights, etc., as set out in instrument recorded in Book E, Volume 29, Page 541, as modified in Book U, Volume 29, Page 358, and in Book 809, Page 702, in the Register's Office of Hamilton County, Tennessee, but omitting any covenant or restriction based on race, color, religion, sex, handicap, familial status or national origin unless and only to the extent that said covenant (a) is exempt under Chapter 42, Section 3607, of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons.
>
> Easement as set out in instrument recorded in Book 1570, Page 73, in the Register's Office of Hamilton County, Tennessee.
>
> Conditions and easements contained in document of record in Book 2116, Page 186, in the Register's Office of Hamilton County, Tennessee.

7

For further reference see Quitclaim Deed recorded on March 28, 2019, in Deed Book GI 11599, Page 617, in the Register's Office of Hamilton County, Tennessee, Instrument Number 2019032800173.

13.     Based on the information developed throughout this investigation and set out in this affidavit, I believe the subject property constitutes facilitating property and/or proceeds traceable to violations of 21 U.S.C. §§ 841 (Drug Distribution) and 846 (Drug Conspiracy) and is subject to civil forfeiture pursuant to 21 U.S.C. §§ 881(a)(6) and/or 881(a)(7), and further constitutes proceeds traceable to violations of 18 U.S.C. §§ 1956 and/or 1957 (Money Laundering) and is subject to civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

## Drug Investigation Background

14.     In 2014, the ATF, Chattanooga Police Department, and other federal, state, and local law enforcement agencies began conducting an investigation into Jamaal PARKER.  In August 2018, the DEA, ATF, Chattanooga Police Department, and other federal, state, and local law enforcement agencies initiated an investigation into JERRIOD SIVELS, also known as "JERRIOD LEE," also known as "JERRIOD SIVELS-LEE," also known as "JERRY," also known as "LIL JERRY," also known as "BRMG JAY," JAMAAL PARKER, also known as "MAAL," also known as "MONEYMAAL," and other co-conspirators who are engaged in the distribution of cocaine, marijuana, and other narcotics in Tennessee, Georgia, and elsewhere. The investigation to date has revealed that PARKER and SIVELS are leaders within this Drug Trafficking Organization ("DTO") and have utilized 3505 Hoyt Street, Chattanooga, Tennessee to facilitate their drug trafficking through the storage and sales of narcotics as more fully described below.   PARKER and SIVELS control the sale and distribution of cocaine and

marijuana in the Eastern District of Tennessee (EDTN) and distribution of cocaine and marijuana to subordinates in this DTO.

15.     During the course of this investigation, DEA and other law enforcement agencies obtained information regarding PARKER and SIVELS' DTO from several cooperating sources to include Confidential Source Three ("CS-3.")  CS-3 made multiple controlled purchases of cocaine from SIVELS as detailed below.  Additionally, CS-3 was present for numerous calls and text messages wherein SIVELS discussed and facilitated drug trafficking.

16.     On September 12, 2018, DEA met with CS-3 and obtained approximately 25 grams of cocaine from CS-3.  CS-3 relayed that SIVELS provided the cocaine to CS-3 on consignment on September 11, 2018.  On September 13, 2018, DEA met with CS-3 and formulated plans to make a controlled money payment to SIVELS for the cocaine received by CS-3 on September 11, 2018.   At that time, CS-3 advised that CS-3 had sent a text message to Jerriod SIVELS at Target Telephone #1.  This message was reviewed by agents on CS-3's cellular telephone and related that CS-3 had the money CS-3 owed and that CS-3 wanted to meet with Jerriod SIVELS.  At approximately 2:35 p.m., CS-3 received an incoming recorded telephone call from Jerriod SIVELS.  This telephone call was witnessed and monitored by law enforcement.  During the call, CS-3 stated, "I need to drop this off to you."  Jerriod SIVELS replied, "I'm going to call you as soon as I get out."  Your Affiant believes that during this telephone call, CS-3 told Jerriod SIVELS he had money to pay Jerriod SIVELS for the previously received one ounce of cocaine, and SIVELS told CS-3, he would call CS-3 soon.  In subsequent recorded and monitored telephone calls between CS-3 and SIVELS, SIVELS directed CS-3 to meet a third party at a car wash in Chattanooga, Tennessee.  At the direction of law enforcement, CS-3 subsequently met with and paid Anthony POINDEXTER $1,100.00 in

pre-recorded DEA funds for the cocaine CS-3 obtained from SIVELS on September 11, 2018. The cocaine was later sent to the DEA laboratory for testing and safekeeping and the lab results showed that the substance was 25.22 net grams of cocaine with a 14% purity.

17.     On October 4, 2018, law enforcement personnel met with CS-3 at a pre-arranged location and formulated plans to make a controlled purchase of one ounce of cocaine from Jerriod SIVELS. CS-3 subsequently had several recorded and monitored telephone conversations with SIVELS in which SIVELS agreed to meet with CS-3 to sell CS-3 cocaine. At the direction of law enforcement, CS-3 later met with SIVELS and purchased approximately one ounce of cocaine from SIVELS for $1,000.00 U.S. currency.

18.     On November 15, 2018, CS-3 made a recorded telephone call to Jerriod SIVELS at Target Telephone #1. Your Affiant and DEA Special Agent Andrew Bergren witnessed and monitored this phone call to include the telephone number dialed. During the call, CS-3 related that CS-3 had been needing Jerriod SIVELS. Jerriod SIVELS advised CS-3 that he had been in "county." Your affiant is aware that Jerriod SIVELS was incarcerated in the Hamilton County Jail for a probation/parole violation between November 8 and November 13, 2018. CS-3 then told Jerriod SIVELS that he "would be ready tomorrow" and would need "more than usual." Jerriod SIVELS told CS-3 to "call when ready." Your Affiant believes that during this conversation, CS-3 advised Jerriod SIVELS that CS-3 had needed to get additional cocaine from Jerriod SIVELS and Jerriod SIVELS advised that he had been incarcerated. CS-3 then informed Jerriod SIVELS that CS-3 wanted to purchase more than the usual one ounce of cocaine. Jerriod SIVELS then told CS-3 to contact him when CS-3 was ready.

19.     On November 16, 2018, CS-3 sent a text message to Jerriod SIVELS on Target Telephone #1 stating, "I'm gonna need 4 and a spit when you get up need it before 2pm I have to

10

Case 1:19-cv-00155  Document 1-2  Filed 05/21/19  Page 10 of 20  PageID #: 18

get on the high-way by that time get at me." Your Affiant is aware that "4 and spit" is a reference to 4 ½ ounces of cocaine. At approximately 11:50 a.m., CS-3 contacted law enforcement and advised that Jerriod SIVELS had called CS-3 from Target Telephone #1 and they agreed to meet in 45 minutes. At approximately 12:42 p.m., SIVELS' vehicle was located at 3506 Hoyt Street, Chattanooga, Tennessee. At that same time, PARKER's Chevrolet Silverado bearing Tennessee license plate 5G22P4 was observed parked in front of 3505 Hoyt Street, Chattanooga, Tennessee. Surveillance later observed a subject walk from 3505 Hoyt Street to 3506 Hoyt Street. Shortly thereafter, Jerriod SIVELS' vehicle was observed to depart Hoyt Street. Surveillance of Jerriod SIVELS was lost. At approximately 12:55 p.m., surveillance observed SIVELS parked at the arranged meet location. After the meeting, law enforcement met with CS-3 and found that SIVELS had only provided CS-3 with approximately three ounces of cocaine. At the direction of law enforcement, CS-3 contacted SIVELS and arranged to meet him back at the original meet location. CS-3 then returned to the meet location and received a second bag of cocaine from an uninvolved party that SIVELS had left at the meet location for CS-3. In total, law enforcement recovered approximately 111 grams of cocaine from CS-3. At approximately 1:22 p.m., CS-3 sent a text message to SIVELS at Target Telephone #1 stating in part, "I'm good fam I got it." Your Affiant believes that in this text message, CS-3 told Jerriod SIVELS that he obtained the additional ounce of cocaine Jerriod SIVELS had left with the third party.

20. On January 16, 2019, the DEA formulated plans to make a controlled purchase of cocaine from SIVELS. At approximately 4:35 p.m., CS-3 made a recorded telephone call to Jerriod SIVELS on Target Telephone #1. During the call, CS-3 stated, "We'll need ya in about 45 minutes" and SIVELS responded, "Alright, call me." Your Affiant believes that during this

call, CS-3 advised Jerriod SIVELS that CS-3 needed to purchase cocaine and Jerriod SIVELS agreed. Surveillance was subsequently established at SIVELS' residences, located at 207 Gillespie Terrace and at 3505/3506 Hoyt Street, Chattanooga, TN. At approximately 5:03 p.m., surveillance officers observed Jerriod SIVELS depart Gillespie Terrace in a blue Hyundai SUV bearing license New York license plates JEF9822. CS-3 then drove to the arranged meet location in Chattanooga, Tennessee. Surveillance was maintained on CS-3. At approximately 5:09 p.m., CS-3 called SIVELS and advised CS-3 was "at the house." This call was intercepted pursuant to court-authorized interceptions of Target Telephone #1. At approximately 5:27 p.m., Jerriod SIVELS was observed by surveillance arriving at 3505 Hoyt Street. At approximately 5:33 p.m., Jerriod SIVELS was observed departing Hoyt Street. At approximately 5:38 p.m., surveillance observed Jerriod SIVELS' arrive to the meet location. At that time, CS-3 walked to SIVELS' vehicle and entered the rear of SIVELS' vehicle.

21. Law enforcement then met with CS-3 at a pre-arranged location and retrieved approximately 50 grams of cocaine from CS-3. CS-3 advised that Jerriod SIVELS had a small cooler that he retrieved the cocaine from and when he did, CS-3 observed approximately five to six additional ounces of cocaine in the cooler. The cocaine was later field-tested and tested positive for cocaine. The cocaine was subsequently sent to the DEA laboratory for testing and safekeeping and the results are pending. Based on my training, experience, and knowledge of this investigation, I believe that Jerriod SIVELS obtained the cocaine supplied to CS-3 from 3505 Hoyt Street, Chattanooga, Tennessee.

22. On January 17, 2019, at approximately 2:07 p.m., Target Telephone #1 received an incoming telephone call from telephone number 470-680-0530, utilized by GARRETT. During the call, GARRETT asked Jerriod SIVELS, "Have you made it out yet?" Jerriod

SIVELS replied, "Yeah, I finna come out now." GARRETT then stated, "Alright, yeah, I need, my boy wanted to holla at you." Jerriod SIVELS then stated, "I won't be long bout twenty minutes." Your Affiant believes that during this telephone call, GARRETT related that he wanted to meet with Jerriod SIVELS to conduct a drug transaction and that Jerriod SIVELS told GARRETT that he was getting ready to leave his residence and would be at 3505 Hoyt Street, Chattanooga, Tennessee in twenty minutes.

23. At approximately 2:40 p.m., surveillance officers observed GARRETT arrive and park at 3505 Hoyt Street, Chattanooga, Tennessee. At this same time, law enforcement observed SIVELS depart his Gillespie Terrace residence and drive to 3506 Hoyt Street, Chattanooga, Tennessee. Jerriod SIVELS was then observed by surveillance to walk across the street to 3505 Hoyt Street. At approximately 2:48 p.m., law enforcement observed GARRETT depart the residence. Shortly thereafter, a Chattanooga Police Department Officer conducted a traffic stop on GARRETT's vehicle for a window tint violation. A probable cause search of the vehicle was subsequently conducted and resulted in the seizure of 29.6 grams of cocaine, 15 grams of crack cocaine, 2.9 grams of marijuana, and 1.1 grams of suspected MDMA from a camera bag located in the passenger's, Shawanna MURRAY, purse. The cocaine was subsequently field-tested and positive results for cocaine were obtained. The seized narcotics were subsequently sent to the DEA laboratory for testing and safekeeping and the results are pending. Based on my training, experience, and knowledge of this investigation, I believe that GARRETT met with and obtained the seized cocaine from Jerriod SIVELS at 3505 Hoyt Street, Chattanooga, Tennessee.

24. On January 21, 2019, at approximately 5:50 p.m., Target Telephone #1 made an outgoing telephone call to telephone number 423-800-3408, utilized by an unknown male. During the telephone call, Jerriod SIVELS asked, "What's up dude? Where you at?" The

unknown male replied, "On the block." Jerriod SIVELS replied, "Alright." At approximately

7:10 p.m., Target Telephone #1 received an incoming call from telephone number 423-800-3408,

utilized by an unknown male. During the telephone call, the unknown male stated, "Hey kin

folk. I need that plus two." At approximately 7:56 p.m., Target Telephone #1 received an

incoming telephone call from telephone number 423-800-3408, utilized by an unknown male.

During the call, the unknown male stated, "Hey I'm here, at right here." Jerriod SIVELS replied,

"You over there?" and "Okay here I come." Your Affiant believes that during these telephone

calls, Jerriod SIVELS and an unknown male discussed meeting at 3505 Hoyt Street,

Chattanooga, Tennessee to conduct a drug transaction for cocaine.

      25.     At approximately 8:15 p.m., surveillance officers observed a green colored

Dodge Charger park in front of the driveway at 3505 Hoyt Street. Jamaal PARKER's Chevrolet

Silverado pick-up truck was observed in the driveway of 3505 Hoyt Street at this same time.

Shortly thereafter, an unknown male could be observed walking back to the vehicle from 3505

Hoyt Street and departing. Surveillance was maintained on the vehicle. At approximately 8:26

p.m., a Chattanooga Police Department officer initiated a traffic stop on the vehicle. As the

vehicle fled from the traffic stop, the officer observed items being tossed out of the vehicle. The

officer subsequently stopped and recovered approximately 57.2 grams of cocaine, 84.8 grams of

crack cocaine, and 38.9 grams of marijuana from the area in which the officer observed the items

discarded. The driver of this vehicle was later identified as Deonta BANKS. The crack cocaine

and cocaine were subsequently field-tested and indicated positive for cocaine. The seized items

were subsequently sent to the DEA laboratory for testing and safekeeping and the results are

pending. Based on my training, experience, and knowledge of this investigation, I believe

BANKS met with and purchased cocaine from Jerriod SIVELS at 3505 Hoyt Street, Chattanooga, Tennessee prior to the above detailed traffic stop.

26.     On February 16, 2019, law enforcement conducted surveillance on Jerriod SIVELS and Jamaal PARKER subsequent to intercepted communications on February 15, 2019, which indicated that Jerriod SIVELS would be meeting with his cocaine source of supply the following day.  At approximately 10:05 a.m., Jerriod SIVELS was observed by surveillance to arrive to 3505 Hoyt Street, Chattanooga, Tennessee.  At approximately 11:10 a.m., camera surveillance showed Jerriod SIVELS depart Hoyt Street.  Surveillance was maintained on Jerriod SIVELS.  At approximately 11:34 a.m., Jerriod SIVELS was observed parking at the known residence of Jamaal PARKER.  At approximately 12:35 p.m., Jerriod SIVELS and Jamaal PARKER were observed to depart the residence and surveillance was maintained on both subjects.  Jerriod SIVELS and Jamaal PARKER were later observed at 207 Gillespie Terrace, Chattanooga, Tennessee and then back at 3505 Hoyt Street, Chattanooga, Tennessee.  At approximately 2:36 p.m., Jamaal PARKER's vehicle was observed leaving 3505 Hoyt Street, Chattanooga, Tennessee.  Both Jamaal PARKER and Jerriod SIVELS were occupants of the vehicle.  The vehicle was then followed by surveillance to Anthony POINDEXTER's residence in Chattanooga, Tennessee.  At approximately 3:02 p.m., Jamaal PARKER and Jerriod SIVELS departed the residence in Jamaal PARKER's vehicle and POINDEXTER departed in his vehicle. Surveillance was maintained on both vehicles.  At approximately 4:55 p.m., law enforcement determined that both vehicles were at a residence in Atlanta, Georgia.  At approximately 5:18 p.m., both vehicles departed the Atlanta residence.

27.     At approximately 5:52 p.m., Georgia State Police (GSP) officers initiated a traffic stop on POINDEXTER for traffic violations.  At approximately 5:53 p.m., Target Telephone #2

15

received an incoming telephone call from POINDEXTER.  During the call, POINDEXTER

stated, "Hey, they just pulled me over man. Bartow County man."  Jerriod SIVELS replied, "For

real?"  POINDEXTER then stated, "Yeah, yeah man" and Jerriod SIVELS replied, "God

damn.?  A subsequent probable cause search of POINDEXTER's vehicle resulted in the seizure

of approximately eight kilograms of cocaine from a black gym bag located on the rear seat of the

vehicle.  POINDEXTER was subsequently arrested and transported to the Bartow County jail.

The cocaine was later field-tested and it tested positive for cocaine.  The cocaine was

subsequently sent to the DEA laboratory for testing and safekeeping and the results are pending.

  28. On March 3, 2019, at approximately 12:50 a.m., Jerriod SIVELS was arrested in

Chattanooga, Tennessee.  At the time of his arrest, a firearm and miscellaneous documents were

seized from Jerriod SIVELS and his vehicle.  The documents included a drug ledger with various

initials and names with numeric values written next to the names.

  29. On March 3, 2019, a federal search warrant was executed at 3505 Hoyt Street,

Chattanooga, Tennessee.  The search warrant resulted in the seizure of cocaine, crack cocaine,

Promethazine, and a hydraulic press with kilogram molds.  Also located in the residence were

miscellaneous items consistent with the processing and packaging of narcotics.  These items

included numerous digital scales, Pyrex glassware with suspected cocaine residue, numerous

boxes of baking soda, Inositol, razor blades with white residue, and filtering masks.   Based on

my training, experience, and knowledge of this investigation, I believe that items seized and

located at 3505 Hoyt Street, Chattanooga, Tennessee, the subject property, were being utilized

by Jerriod SIVELS and Jamaal PARKER to store, process, and distribute cocaine, marijuana,

and other controlled substances.

30.     In March 2019, a cooperating defendant, hereinafter CD-2, was interviewed by DEA.  A substantial portion of the information provided by CD-2 was corroborated by independent investigation, including physical surveillance, the review of DEA and ATF documents as well as other federal, state, and local documents, interviews of other members of the above-stated drug trafficking organization, controlled purchases of narcotics, and court-authorized interception of wire and electronic communications.  During the interview, CD-2 stated that CD-2 knew Jerriod SIVELS and Jamaal PARKER for approximately ten years.  CD-2 did not know Jerriod SIVELS or Jamaal PARKER to have employment during that period.  CD-2 advised that CD-2 was a cocaine user and was frequently supplied user quantities cocaine from Jerriod SIVELS and from members of Jerriod SIVELS' drug organization.  CD-2 stated that CD-2 brokered cocaine transactions between several customers that CD-2 knew and Jerriod SIVELS.  CD-2 stated that CD-2 would frequently collect drug debts from these persons for Jerriod SIVELS.  CD-2 further stated that Jerriod SIVELS and Jamaal PARKER previously distributed cocaine from 617 Shannon Avenue, Chattanooga, Tennessee but began distributing from 3505 Hoyt Street, Chattanooga, Tennessee shortly after Jerriod SIVELS acquired the property.  CD-2 knew that Jerriod SIVELS and Jamaal PARKER converted cocaine powder to crack cocaine at 3505 Hoyt Street, Chattanooga, Tennessee.

31.     An Indictment was filed on March 26, 2019 in the Eastern District of Tennessee, charging Jerriod SIVELS, Jamaal PARKER, and others with conspiracy to distribute and possess five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), 841(b)(1)(B) and 841(b)(1)(C).  The Indictment also charged Jerriod SIVELS and Jamaal PARKER with maintaining 3505 Hoyt Street for the purpose of distributing Schedule II

controlled substances in violation of 21 U.S.C. § 856(a)(1).  On April 23, 2019, a Superseding

Indictment was filed in the Eastern District of Tennessee, charging violations of 21 U.S.C.

§§ 846, 841(a)(1), 841(b)(1)(A),  841(b)(1)(B), 841(b)(1)(C), 856(a)(1) and 18 U.S.C.

§§ 1956(h), 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) and 2, among other violations.  The Superseding

Indictment included forfeiture allegations of the subject property pursuant to 21 U.S.C. § 853

and 18 U.S.C. § 982(a)(1).

   32. On November 6, 2018, Jerriod SIVELS-LEE purchased 3505 Hoyt Street for

$40,000.00.  According to the title history for 3505 Hoyt Street, there was no Deed of Trust or

mortgage lien recorded against SIVELS-LEE in connection with his purchase of the property.

   33. On March 28, 2019, the subject property was conveyed via a Quitclaim Deed

from Jerriod SIVELS-LEE to Marcus Sanders, as recorded in Book GI 11599, Page 617,

Instrument Number 2019032800173 in the Register Office of Hamilton County, Tennessee.

   34. Your Affiant is not aware of Jerriod SIVELS having any legitimate employment.

Your Affiant is further aware that after Jerriod SIVELS' arrest, he submitted a financial affidavit

to the court which indicated Jerriod SIVELS was not employed.

## CONCLUSION

   35. Through the course of this investigation, the DEA has learned that Jerriod

SIVELS and Jamaal PARKER have been involved in the distribution of cocaine, marijuana, and

other controlled substances since at least 2014.  Jerriod SIVELS only known source of legitimate

income is through rental properties owned by Jerriod SIVELS at 3604 and 3606 3rd Avenue,

Chattanooga, Tennessee.   Information obtained through surveillance, controlled purchases of

narcotics, interviews of cooperating sources and cooperating defendants, and court-authorized

wiretaps has shown that Jerriod SIVELS primary source of income has been through the sale of

narcotics and that the subject property has been used as a site to cut, package, and sale narcotics since approximately November 2018.

36.    I have probable cause to believe the defendant property constitutes facilitating property and/or proceeds traceable to violations of 21 U.S.C. §§ 841 (Drug Distribution) and 846 (Drug Conspiracy) and is subject to civil forfeiture pursuant to 21 U.S.C. §§ 881(a)(6) and/or 881(a)(7), and further constitutes proceeds traceable to violations of 18 U.S.C. §§ 1956 and/or 1957 (Money Laundering) and is subject to civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

All of the above information is true and correct to the best of my knowledge.

FURTHER, YOUR AFFIANT SAYETH NOT.

_William C. Wise_
William C. Wise
Special Agent
Drug Enforcement Administration

STATE OF TENNESSEE

COUNTY OF HAMILTON

On this ___13th___ day of May, 2019, before me, personally appeared William C. Wise, in his capacity as a Special Agent with the Drug Enforcement Administration, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that she executed the same as her free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal.

Subscribed to and sworn before me on this this ___13th___ day of May, 2019.

_Terrie L. Scharer_
NOTARY PUBLIC

My Commission Expires: ___11-26-22___

19